UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CALIFORNIA BANK & TRUST, as assignee of the Federal Deposit Insurance Corporation, as receiver for VINEYARD BANK,<br><br>                Plaintiff,<br><br>v.<br><br>SHILO INN, BOISE AIRPORT, LLC, an Oregon limited liability company; and MARK S. HEMSTREET, an Oregon resident,<br><br>                Defendants. | Case No. 1:12-cv-00141-CWD<br>            1:12-cv-00142-CWD<br>            1:12-cv-00143-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court are Plaintiff California Bank & Trust's motions to modify the case management order, and to file a supplemental complaint.[1] In addition, the Court will dispose of the Motion to Appoint Receiver, (Dkt. 6), which remains pending. For the

---

[1] The Bank filed identical motions in these three cases pending before this Court involving three Shilo Inn locations—Boise, Twin Falls, and Nampa. Other than the location of the Shilo Inn properties and the entity that owns each one, the Complaints, loan documents, and facts are identical in each case. Although the bank separately filed a motion to modify and a motion to supplement, only one memorandum was filed. (Dkt. 45, 46.) The motions and memorandum were identical in each case, and therefore the Court's order pertains to all three cases. The docket entry citations, unless otherwise indicated, refer to the docket entries in Case No. 1:12-cv-141-CWD.

**MEMORANDUM DECISION AND ORDER - 1**

reasons that follow, the Bank's motions to amend the case management order and supplement its complaint will be granted.[2]

## BACKGROUND

The Bank is the successor-in-interest to Vineyard Bank by assignment through the FDIC. On August 3, 2005, the Bank provided financing to Defendant Shilo Inn Nampa in the amount of $1,350,000; Shilo Inn Boise in the amount of $4,000,000; and Shilo Inn Twin Falls in the amount of $6,000,000, secured by the respective real properties. The Bank provided also a secured loan to Defendant Mark Hemstreet, the principal behind the Shilo Inn franchises. The Bank's three count complaint, filed on March 19, 2012, sought the following relief: (1) specific performance of the deeds of trust, appointment of a receiver, and injunctive relief; (2) accounting and turnover of receipts; and (3) judicial foreclosure of the Shilo Inn deed of trust and the Hemstreet deed of trust.[3]

On April 12, 2012, the Bank filed a motion seeking the appointment of a receiver and an injunction ordering the parties to cooperate with the receiver. On May 14, 2012, the Court conducted a hearing on the Bank's motion, as well as a case management conference. On May 17, 2012, the Court entered its case management order, which established June 19, 2012, as the deadline for amending the pleadings. On May 22, 2012, the Court issued an order regarding the Bank's motion for appointment of a receiver.

In its May 22, 2012 memorandum decision and order, the Court granted the Bank's motion for appointment of a receiver, limited to a rents-and-profit receiver.

---

[2] The Court finds the matters are fully briefed and suitable for disposition without oral argument. Dist. Idaho L. Rule 7.1(d)(1)(B).
[3] The Bank's loans to Shilo Inn are evidenced by a promissory note, deed of trust, and business loan agreement. The Bank's unsecured revolving line of credit to Hemstreet is evidenced by a promissory note and a deed of trust.

**MEMORANDUM DECISION AND ORDER - 2**

However, the Court ordered the Bank to provide a payoff amount within seven days, and required Shilo Inn to pay the amounts owed in full within fourteen days thereafter. The Order specifically stated that, if the amounts due were not paid in full within twenty-one days, the Court would sign an order appointing a receiver. If the amounts were paid in full, the receivership issue would be moot.

On June 5, 2012, Shilo Inn moved for an order excluding disputed attorney fees and default interest from the payoff amount. On June 11, 2012, the Court conducted a hearing, and promptly issued an order on June 12, 2012. The June 12, 2012 Order amended the May 22, 2012 order by requiring Shilo Inn to pay all sums due, "which sums will include all amounts in default and required to reinstate the loans in these matters. The sums therefore include any penalty interest amounts, as well as any amounts unpaid since Plaintiff provided its payoff figure to Defendants. The sums due exclude the disputed attorney fees over and above the $16,908.00 calculated by Defendants based upon the statutory cap." The Court indicated it would address the fee issue at a later date.

The parties each filed a status report. Shilo Inn on June 14, 2012, reported it paid $834,911.23, which included the overdue amounts required for the loans secured by the Boise, Nampa, and Twin Falls Shilo Inn properties. The Bank confirmed receipt of the money in its June 19, 2012 status report, but noted that there were "several additional non-monetary defaults under the subject loan documents . . . which were not addressed" in the Bank's motion or the Court's order. The Bank indicated it intended to continue to pursue its rights and remedies under the loan documents.

**MEMORANDUM DECISION AND ORDER - 3**

On September 19, 2012, the Bank filed its motion to supplement its complaint and amend the scheduling order, seeking to add the following factual allegations to the Complaint:

1) The Bank reminded Shilo Inn and Hemstreet on June 15, 2012, via a written letter, that further events of default would exist under the loan documents if certain events did not occur by the end of the Forbearance Period, which was set to expire on June 30, 2012;

2) By June 30, 2012, pursuant to Sections 2(d)(iv) and (v) of the Second Amendment, Selling Borrowers were required to have sold the Sale Properties and paid down the Outstanding Balances of the Loans in accordance with the Second Amendment;

3) Post Closing Obligations (as defined in the Hemstreet First Amendment) required pursuant to Section 2(c) of the Second Amendment were to be satisfied by August 17, 2011;

4) Shilo Inn and Hemstreet failed to take the required actions by June 30, 2012 and August 17, 2011;

5) Defendants' failure to fully comply with the terms of the Second Amendment constituted an additional material breach of the Second Amendment and was a further event of default under the Shilo Inn Loan Documents and the Hemstreet Loan Documents;

6) The Forbearance Period had now expired, and as a result of the additional defaults, the Bank declared that all obligations under the loan documents had matured,

**MEMORANDUM DECISION AND ORDER - 4**

and that all outstanding indebtedness under the Shilo Inn Loan Documents and Hemstreet Loan Documents were immediately due and owing in full.

On November 19, 2012, the Court conducted a hearing concerning Defendants' motion to stay, and the alternative Stipulation of the parties requesting a 120 day extension of all future case management deadlines. The Court granted the parties' stipulation, but denied the request for a stay. (Dkt. 57). The case management deadlines regarding discovery, expert disclosures, and dispositive motions were extended. Factual discovery must be completed by May 14, 2013, and dispositive motions must be filed by July 13, 2013.

## ANALYSIS

**1.      Motion to Appoint Receiver and Effect of the Court's Prior Orders**

Although the Bank suggested otherwise at the November 19, 2012 hearing, the Motion to Appoint Receiver is no longer a live controversy in the context it was presented to the Court in April of 2012. The motion for receivership was premised at that time upon nonpayment by Shilo Inn of amounts due under the loan documents for October and November 2011, as well as nonpayment of real property taxes for tax years 2010 and 2011, and personal property taxes for 2011. Shilo Inn complied with the Court's order requiring payment of the arrearages. Upon payment, the Court stated that the motion for receivership would be moot, and so it is. The Motion will be denied as moot.

However, Defendants contend that the Court's orders exceeded deciding the motion for appointment of receiver. Defendants quoted the Court's June 12, 2012 Order

**MEMORANDUM DECISION AND ORDER - 5**

in support of their assertion that the May 22, 2012 order resolved both the Bank's receivership *claim* and the foreclosure *claim*. Specifically, Defendants state that the Court ordered "'the Bank to provide Shilo Inn with a payoff amount to avoid foreclosure and receivership…'" According to Defendants, the Court included the foreclosure claim when it decided that Shilo Inn could seek reinstatement of its loans and all that remains to be resolved between the parties is whether the punitive default interest and attorney fees must be paid.

Defendants take the Court's statements in its June 12, 2012 Order out of context. The Court's May 22, 2012 order was limited to the issue[4] before the Court at that time, namely the nonpayment by Shilo Inn of the payments due on October 1 and November 1, 2011, and the delinquent tax payments, for which the Bank sought immediate appointment of a receiver in its April 2012 Motion.[5] The Court's orders did not resolve any other alleged incidents of default as described in the Complaint, such as the alleged defaults regarding the failure of Hemstreet to deliver monthly sales reports or Hemstreet's alleged failure to comply with the provision requiring not less than two of the Selling Borrowers (as defined in the Hemstreet Second Amendment) to enter into Purchase Agreements for the sale of not less than two of the Sale Properties on or before September 30, 2011. Nor did the Court resolve the issue of loan reinstatement, or whether the Bank could continue to press its claim in Count I for receivership. Rather, the Court's

---

[4] The Court distinguishes here between the issue presented by the motion, and the claims, or causes of action, made in the Complaint. The two concepts are not interchangeable, as Defendants suggest.

[5] The Court's order did not address the claims against Hemstreet, but Defendants now collectively argue that the only issue remaining is the amount of attorney fees and default interest owing. However, the Complaint stated claims against both Shilo Inn and Hemstreet.

**MEMORANDUM DECISION AND ORDER - 6**

order was limited to the motion and the facts presented to the Court in support of the motion as they existed at that time.

Defendants' arguments that the Court's orders did more than resolving the motion before it at the time miss the mark.[6] The motion before the Court was not a summary judgment motion or a motion to dismiss. The Court did not issue a substantive ruling resolving the foreclosure claim, nor did its order effect a reinstatement of the loans. The Court's use of the quoted language should not be and cannot reasonably be construed in the manner Defendants suggest, given the context of the motion and the facts before the Court at that time. The Court did not make any sweeping ruling resolving the foreclosure cause of action, or that payment of the arrearages described in the Motion for Appointment of Receiver would reinstate Defendants' loans or otherwise cure any of the other alleged defaults—past, present, or future—mentioned in the Complaint or described in the Loan Documents. These substantive issues are best reserved for further motion practice.

## 2. Standard Applicable to the Bank's Motion to Supplement

The Bank filed its Motion to Supplement the Complaint after the deadline set forth in the Court's May 17, 2012 Scheduling Order, (Dkt. 27). The Court will therefore apply

---

[6] Defendants argue also that the Court's orders regarding the appointment of a receiver are materially different than the orders entered by Judge Hernandez on the same issue in the Oregon matters, and further urge the Court that Judge Hernandez's order granting the Bank's motion to amend its complaint in the Oregon proceedings does not control the outcome here. While the Court considered Judge Hernandez's October 1, 2012 order granting the Bank's motion for leave to file its supplemental verified complaint, the Court relied upon the briefs and arguments presented before it, as well as its own prior orders, in rendering this decision.

**MEMORANDUM DECISION AND ORDER - 7**

both Federal Rules of Civil Procedure 15 and 16(b) to the Bank's motion, considering the Bank filed a motion to amend the Case Management Order under Rule 16(b).[7]

After a district court enters a scheduling order pursuant to Rule 16, a motion to amend the pleadings filed after the pleading amendment deadline is governed by Rule 16(b). *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). Pursuant to Rule 16(b), the Court must enter a scheduling order that, among other things, "limits the time ... to join other parties and to amend the pleadings." Rule 16(b). This schedule "shall not be modified except upon a showing of good cause." *Id*.

Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. "The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension. ...' Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 975 F.2d at 609 (citations omitted). Put simply, "good cause" means scheduling deadlines cannot be met despite a party's diligence. 6A Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE § 1522.1 at 231 (2d ed.1990).

If the moving party meets the Rule 16(b) "good cause" standard, then the moving party must demonstrate that the amendment is also appropriate under Rule 15. *See Johnson*, 975 F.2d at 608 (citing *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C.1987); *Financial Holding Corp. v. Garnac Grain Co.*, 127 F.R.D. 165, 166 (W.D.Mo.1989)).

---

[7] The Court of Appeals for the Ninth Circuit has not addressed whether a party seeking to file a supplemental complaint under Rule 15(d) must meet Rule 16(b)'s good cause standard to modify the scheduling order where the motion to supplement is filed after the deadline for amending the complaint. *Global Bldg. Sys. v. Brandes*, 2008 WL 477876 *2 (D. Ariz. Feb. 19, 2008). The Court does not decide the issue, nor did the parties ask the Court to do so.

**MEMORANDUM DECISION AND ORDER - 8**

Rule 15(d) allows supplementation of a complaint by adding causes of action related to events that have happened after the original complaint was filed. *Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 874 (9th Cir. 2010). The goal of Rule 15(d) is to promote judicial efficiency. *Planned Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997). The Rule is to be "liberally construe[d] ... absent a showing of prejudice." *Keith v. Volpe*, 858 F.2d 467, 473-5 (9th Cir.1988). The Ninth Circuit has found a lack of prejudice where the nonmoving party "fail[ed] to point to any specific shortcomings in discovery presented by [the proposed] new ... claim," and where the operative facts for the new and existing claims remained the same. *Hurn v. Retirement Fund Trust of Plumbing, Heating and Piping Industry of S. Cal.*, 648 F.2d 1252, 1254 (9th Cir. 1981).

The Bank relies upon the Forbearance Agreement for supplementing its complaint. The Forbearance Agreement and Second Amendment to Deed of Trust, dated June 30, 2011, (Dkt. 1-6), noted the existence of "Specified Defaults" that had occurred between December of 2010, and May of 2011, for "failing to pay the six (6) Interest Only Payments due under the Note," as well as three additional instances of default. The Bank agreed to grant a "temporary and conditional forbearance concerning the Loan, subject to and upon the terms and conditions hereinafter provided." The Forbearance Agreement indicated that the Bank would forbear "from exercising its remedies under the Loan Documents until June 30, 2012 ("Forbearance Period") so long as Borrower fully and strictly complies" with the terms set forth therein.

Defendants complain that the Bank was not diligent because the Bank was not required to wait until expiration of the forbearance period to bring claims related to non-

**MEMORANDUM DECISION AND ORDER - 9**

monetary defaults that already had occurred under the Forbearance Agreement. The phrase "so long as," according to Defendants, meant the forbearance period no longer had to be adhered to once a deadline passed and Defendants had not complied. Therefore, Defendants argue the Bank knew of the alleged defaults on August 17, 2011, and prior to June 30, 2012, because milestone deadlines had not been met,[8] yet the Bank failed to move earlier to supplement the complaint or adjust the June 19, 2012 pleading amendment deadline. Defendants encourage the Court to examine the Forbearance Agreement and interpret its terms to support a finding that the Bank was not diligent in seeking to amend its complaint.

The Court declines to render a legal interpretation of the Forbearance Agreement at this time along the lines Defendants suggest---that the "so long as" language now prevents the Bank from bringing claims as each milestone deadline came and went due to noncompliance. The Bank might reasonably have thought that, at the eleventh hour, Defendants could have fulfilled their sale and other obligations by the June 30, 2012 forbearance period deadline despite noncompliance with prior milestone deadlines. That it waited until the expiration of the forbearance period does not render the Bank dilatory under the circumstances here. It is certainly reasonable for the Bank to have waited until the expiration of the forbearance period on June 30, 2012, to assert new facts.

Further, the expiration of the forbearance period qualifies as a new occurrence or event happening after the date of the pleading as required under Rule 15(d). Moreover,

---

[8] These milestone deadlines include, but are not limited to, documentation of purchase agreements and sale escrows, which were to have occurred on September 30, 2011, December 31, 2011, and March 31, 2012, well before the Bank filed the Complaint. The Court infers from Defendants' arguments that these deadlines were not met, because no purchase agreements were entered into regarding the Shilo Inn properties.

**MEMORANDUM DECISION AND ORDER - 10**

the supplemental pleading does not allege a new cause of action, but rather adds new facts to already existing causes of action, and which are related to events that have happened since the original complaint was filed. The interests of judicial economy and the liberal interpretation of Rule 15(d) weigh in favor of granting the Bank's motion for leave to file a supplemental pleading. The supplemental pleading involves the same parties, and would resolve the entire controversy between them. The supplemental pleading relates also to the subject of the original action.

Defendants next argue that the proposed amendments to the Complaint are futile, in bad faith, and seek only to delay because the dispute in this matter was resolved by the Court's May 22, 2012 Order. Defendants contend that the new facts "revive the foreclosure cause of action that was already resolved," and that under Cal. Civ. Code § 2924c(a)(1), once payment was tendered the loan was "reinstated." As discussed above, the Court's prior orders did not resolve these issues. The Court did not rule that Shilo Inn's payment to the Bank would reinstate Defendants' loans or otherwise cure every incident of alleged default, monetary or otherwise. The Bank does not seek to add a new cause of action, but rather includes the described incidents as part of the three causes of action already asserted.

Nothing before the Court demonstrates that the Bank's supplemental factual allegations are futile or that it cannot at least attempt to prove or support those claims for relief. And to the extent Defendants rely upon provisions of the California Civil Code, those issues are not properly before the Court on this motion. Further, Defendants do not inform the Court how the supplemental allegations concerning the alleged defaults by

**MEMORANDUM DECISION AND ORDER - 11**

Hemstreet are futile or barred by the doctrine of equitable estoppel. The claims against Hemstreet are distinct from those asserted against Shilo Inn.

Finally, there is no evidence before the Court that the Bank's mere delay of filing this motion one month after it filed the same motion in Oregon District Court constitutes undue delay, bad faith, or dilatory motive, or that Defendants are unfairly prejudiced. The same argument Defendants use to support their opposition to the motion is equally applicable to them. Defendants ostensibly knew they had not met the August 17, 2011, deadline and other milestone deadlines set forth in the Forbearance Agreement prior to the forbearance deadline. Nothing in the record before the Court indicates the Bank waived its right to assert these facts in a supplemental complaint. Further, the Bank's Complaint filed on March 19, 2012, indicated that there may be other defaults not mentioned in the Complaint, but that the Bank was not waiving or releasing any of its rights and remedies with regard to those other defaults. Although these described defaults are different than the ones sought to be added now, Defendants were presumably on notice that the Bank was not waiving its rights. Finally, Defendants have not explained or offered evidence concerning how they are prejudiced by the Bank's supplemental factual allegations. Because of the extension granted in this matter, the parties have sufficient time to engage in discovery regarding these supplemental matters.

**MEMORANDUM DECISION AND ORDER - 12**

## CONCLUSION

For the reasons stated above, the Bank's motion to amend the Court's Case Management Order and to file a supplemental complaint will be granted. The Motion to Appoint Receiver will be denied as moot.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

1) Motion to Appoint Receiver (Dkt. 6) is **DENIED as MOOT**.

2) Motion to Modify the Case Management Order (Dkt. 44) is **GRANTED**.

3) Motion to Supplement Complaint (Dkt. 45) is **GRANTED.**

Dated: **February 8, 2013**

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 13**